Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEVON GIBSON,<br><br>    Plaintiff,<br><br>    v.<br><br>MARLIN BUSINESS SERVICES CORP., JOHN J. CALAMARI, LAWRENCE J. DEANGELO, JOHN CHRISTOPHER TEETS, SCOTT A. HEIMES, MATTHEW J. SULLIVAN, JAMES W. WERT, and JEFFREY A. HILZINGER,<br><br>    Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Devon Gibson ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.   This is an action against Marlin Business Services Corp. ("Marlin" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Marlin by Madeira Holdings, LLC ("Parent") and Madeira Merger Subsidiary, Inc. ("Merger Sub"), a wholly owned subsidiary of Parent. Parent and Merger Sub are subsidiaries of funds managed by HPS Investment Partners, LLC ("HPS").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, the Company conducts business in this District,[1] and HPS, Parent, and Merger Sub are headquartered in New York City.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

---

[1] For example, the Company reportedly participated in conferences in New York City in recent years.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Marlin common stock.

7. Defendant Marlin provides credit products and services to small and mid-sized businesses in the United States. The Company is incorporated in Pennsylvania. The Company's common stock trades on the NASDAQ under the ticker symbol, "MRLN."

8. Defendant John J. Calamari ("Calamari") is a director of the Company.

9. Defendant Lawrence J. DeAngelo ("DeAngelo") is Chairman of the Board of the Company.

10. Defendant John Christopher Teets ("Teets") is a director of the Company.

11. Defendant Scott A. Heimes ("Heimes") is a director of the Company.

12. Defendant Matthew J. Sullivan ("Sullivan") is a director of the Company.

13. Defendant James W. Wert ("Wert") is a director of the Company.

14. Defendant Jeffrey A. Hilzinger ("Hilzinger") is Chief Executive Officer and a director of the Company.

15. Defendants Calamari, DeAngelo, Teets, Heimes, Sullivan, Wert, and Hilzinger are collectively referred to herein as the "Individual Defendants."

16. Defendants Marlin and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17. On April 19, 2021, Marlin announced that it had entered into a definitive agreement in which HPS would, through its European Asset Value Funds, acquire all of the Company's

outstanding shares of common stock in an all-cash transaction for $23.50 per share, subject to potential downward adjustment. The press release announcing the Proposed Transaction states, in pertinent part:

> **Marlin Business Services Corp. Enters Into Definitive Agreement To Be Acquired by Funds Managed By HPS Investment Partners LLC**
>
> April 19, 2021 08:00 ET | Source: Marlin Business Services Corp.
>
> *Marlin Shareholders to Receive $23.50 per share in Cash Transaction*
>
> *Marlin to Become a Privately Held Company Upon Completion of Transaction*
>
> MOUNT LAUREL, N.J., April 19, 2021 (GLOBE NEWSWIRE) -- **Marlin Business Services Corp. (NASDAQ: MRLN)**, a nationwide provider of capital solutions to small businesses ("Marlin" or the "Company"), today announced that it has entered into a definitive agreement in which HPS Investment Partners LLC ("HPS") will, through its European Asset Value Funds, acquire all of the Company's outstanding shares of common stock in an all cash transaction for $23.50 per share, as potentially subject to downward adjustment discussed below, which represents a 65% premium over the closing price of Marlin's common stock of $14.24 on April 16, 2021.
>
> HPS is a leading global investment firm with $68 billion of assets under management as of March 2021. HPS manages various strategies across the capital structure including through its European Asset Value Funds equipment leasing platforms with approximately $4 billion of leases.
>
> Jeffrey A. Hilzinger, Marlin's President and CEO, said, "We are pleased to have reached an agreement with HPS for the sale of Marlin, which will deliver significant value to our shareholders. After successfully executing the transformation of Marlin into a broad provider of credit products and services to small businesses over the last five years, and effectively navigating through the uncertainties of the pandemic, we believe that this transaction reflects Marlin's intrinsic value and is the best opportunity to maximize shareholder value. We look forward to partnering with HPS to continue serving our partners and small business customers by providing fast and flexible financing solutions to meet their needs."
>
> The Company's Board of Directors has unanimously approved the transaction. The closing of the transaction is subject to various customary closing conditions, including regulatory and shareholder approvals, as well as the condition that Marlin Business Bank effect a "de-banking" and cease operations as a bank. Subject to satisfaction of all closing conditions, which there can be no assurances will occur, the Company believes the transaction would likely close in the first quarter of

2022. In connection with the transaction, Red Mountain Capital Partners, and certain of its affiliates, have signed a Voting Agreement whereby Red Mountain Capital Partners has agreed to vote in favor of the transaction. The aggregate consideration paid by certain funds managed by HPS to Marlin shareholders may be reduced if the total costs in connection with the de-banking of Marlin Business Bank exceed $8 million. At this time, the Company does not expect this provision to have a material impact on the consideration received. Following the closing, Marlin will become a privately held company and shares of Marlin will no longer be listed on NASDAQ.

J.P. Morgan served as exclusive financial advisor and Mayer Brown served as legal counsel to the Company on the transaction. Skadden, Arps, Slate, Meagher & Flom LLP served as legal counsel to HPS.

*   *   *

**About Marlin**
Marlin is a nationwide provider of capital solutions to small businesses with a mission of helping small businesses fulfill their American dream. Our products and services are offered directly to small businesses and through financing programs with independent equipment dealers and other intermediaries. For more information about Marlin, visit marlincapitalsolutions.com or call toll free at (888) 479-9111.

18. On June 16, 2021, the Company filed a Schedule 14A Preliminary Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

19. The Proxy Statement, which recommends that Marlin shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Marlin's financial projections; (ii) the financial analyses performed by Marlin's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

20. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger;

(ii) Recommendation of the Company Board of Directors; Reasons for the Merger; (iii) Opinion of J.P. Morgan Securities LLC; and (iv) Unaudited Prospective Financial Information.

21. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Marlin shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning Marlin's Financial Projections**

22. The Proxy Statement omits material information concerning Marlin's financial projections.

23. With respect to the Company's financial projections for fiscal years 2021 through 2031, the Proxy Statement fails to disclose: (1) all line items underlying (i) Adj. ROAA, and (ii) Adj. ROATCE; (2) the Company's cash flow projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

24. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

25. When a company discloses non-GAAP financial metrics in a Proxy Statement that

were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[2]

26. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning J.P. Morgan's Analyses**

27. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by J.P. Morgan.

28. The Proxy Statement fails to disclose the following concerning J.P. Morgan's "*Public Trading Multiples Analysis*": (1) the individual multiples and financial metrics of each company J.P. Morgan observed in its analyses; (2) the estimated earnings per share for the Company for the fiscal year 2021; and (3) the tangible book value per share for the Company.

29. The Proxy Statement fails to disclose the following concerning J.P. Morgan's "*Company Dividend Discount Analysis*": (1) the terminal values of the Company; and (2) the

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited June 28, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

individual inputs and assumptions underlying the (i) multiple range of 9.0x to 11.0x, and (ii) cost of equity range of 13.0% - 14.0%.

30. The Proxy Statement fails to disclose the following concerning J.P. Morgan's selected transaction analysis: (1) each transaction J.P. Morgan utilized in its analysis; and (2) the individual multiples and financial metrics of each company J.P. Morgan observed in its analysis.

31. The Proxy Statement fails to disclose the following concerning J.P. Morgan's analysis of premiums in public company transactions for the years 2011 through 2020: (1) the transactions observed in the analysis; (2) the individual premiums paid therein; and (3) the median all-cash control premiums in public company transactions for the years 2011 through 2020.

32. The valuation methods, underlying assumptions, and key inputs used by J.P. Morgan in rendering its purported fairness opinion must be fairly disclosed to Marlin shareholders. The description of J.P. Morgan's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Marlin shareholders are unable to fully understand J.P. Morgan's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

    **3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

33. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

34. The Proxy Statement provides that, "on April 7, 2021, Party G delivered to J.P. Morgan an unsolicited proposal to acquire the Company for $25.00 per share in cash[,]" $1.50 per

8

share or 6% more than proposed merger consideration and HPS's offer.

35. According to the Proxy Statement, the Board rejected Party G's proposal due to, among other things, the risk and timing involved in Party G obtaining the requisite regulatory approvals to operate Marlin Business Bank ("MBB"), the fact that Party G had not yet completed its due diligence of the Company, and that the Board did not believe that Party G would be able to finance its proposal.

36. The Proxy Statement, however, fails to disclose: (1) whether Party G was amenable to "De-Banking" MBB, like HPS; (2) whether Party G's April 7, 2021 proposal was conditioned on owning and operating MBB; (3) how much more time Party G needed to complete its due diligence of the Company; (4) whether Party G's April 7, 2021 proposal was contingent upon obtaining financing; and (5) the specific reasons and bases for why the Board did not believe that Party G would be able to finance its proposal.

37. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

38. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

40. Each of the Individual Defendants, by virtue of his/her positions within the

Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

41. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

42. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the

false and misleading Proxy Statement.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

48. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control

11

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 28, 2021                                  Respectfully submitted,

                                                      **HALPER SADEH LLP**

                                                      By: /s/ Daniel Sadeh
                                                      Daniel Sadeh, Esq.

Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
           zhalper@halpersadeh.com

*Counsel for Plaintiff*